1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

MICHAEL KLEIN,

             Plaintiff,

    v.

C. MILLER, et al.,

             Defendants.

_____/

Case No. 1:15-cv-00742 DAD DLB PC

FIRST SCREENING ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983

## I.    Screening Requirement and Standard

Plaintiff Michael Klein, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 14, 2015.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal conclusions are not.  *Iqbal*, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

## II.   Discussion

### A.   Plaintiff's Allegations

Plaintiff was incarcerated at Avenal State Prison ("ASP") in Avenal, California, at the time the events giving rise to this action occurred.  Plaintiff brings this action against the following Defendants: Lieutenant C. Miller; Correctional Officer D. Weston; LVN A. Romero; LVN A. McCoy; SRN II G. Myers; SRN III D. Edmond; CNE B. Jeffrey; SRN II S. Malogi; Hiring Authority D. McElroy; Lieutenant J. Mendiboure; Warden C. Wofford; SSA C. McLeod; CHSA K. Thornton; Sergeant B. Davi; LVN Contreras; LVN Stockton; Lieutenant Sunamoto; and Doe Hiring Authority.

Plaintiff alleges as follows.  In 2012, Plaintiff was diagnosed with Stage 4 cirrhosis of the liver.  He was prescribed Boceprevir to slow or prevent any further scarring, deterioration, and damage caused by his Hepatitis C and to prevent total liver failure for his incurable life-threatening condition.  He must take this medication three times daily specifically at 6:30 a.m.,

1  2:30 p.m., and 9:30 p.m.

2      On March 6, 2014, Plaintiff went to the clinic to receive his 2:30 p.m. medication.  After a
3  conversation with the porter, Defendant Weston asked Plaintiff, "What do you need?"  When
4  Plaintiff informed her he was there for his medication, Defendant Weston replied, "They will call
5  for you when they are ready for you."  Plaintiff, standing behind the red line, yelled through the
6  door, "They're already late. 1430 hours is the deadline for my medication."  Defendant Weston
7  turned to notify Defendants Romero and McCoy when Plaintiff yelled, "Those fucking bitches are
8  late" and he began to walk away.  Defendant Weston tried to counsel Plaintiff about his conduct
9  when Plaintiff yelled, "Fuck Romero and fuck those meds, I have shit to do."  Defendant Weston
10  claimed Plaintiff yelled so loudly that he disrupted the pill line and continued to yell profane
11  language as he walked to the workout area even though there is no 2:30 p.m. pill line.

12      After Plaintiff yelled through the door that Defendants Romero and McCoy were late,
13  Defendant Weston came out of the clinic and told Plaintiff, "Get off my door; we'll call for you
14  when we're ready for you."  Plaintiff followed Weston's orders and went to the work out area.

15      The clinic paged Plaintiff about 15 minutes later.  Plaintiff knocked on the door and
16  Defendant Weston responded by stating, "What happened?"  Plaintiff stated, "You told me to
17  leave, so I did."  He then informed Weston that he was going to refuse his medication.  At that
18  time Defendant Miller arrived and Defendant Weston informed her of the events.  Defendant
19  Miller advised Weston to write Plaintiff a serious 115 for disrupting Defendants Romero and
20  McCoy as it would be his third 115 and they could put him on "C-over-C" and could take his
21  property and privileges.

22      On March 7, 2014, Plaintiff was served with the disciplinary charges of "acts of
23  disobedience or disrespect which by reason of intensity or context create a potential for violence
24  or mass disruptive conduct."  However, he was not provided with Defendant Romero's or
25  McCoy's reports.  Plaintiff requested that Defendant Mendiboure call Defendants Romero and
26  McCoy as witnesses at the hearing.  There was no informal denial of his request prior to the
27  hearing so he did not interview the witnesses.

28      On March 15, 2014, without receiving Defendants McCoy or Romero's report, Plaintiff

3

appeared for the disciplinary hearing before Defendant Mendiboure.  Mendiboure requested the attendance of Defendant Weston and eyewitness Inmate Miller, however, Mendiboure denied Plaintiff's request for appearances by Defendants McCoy and Romero since they were off duty and unavailable.  Mendiboure further did not attempt to have Romero and McCoy attend via telephone; however, he informed Plaintiff that he would stipulate to their testimony.  Plaintiff remarked, "So you are denying my right to my witnesses?"  Defendant Mendiboure stated, "I only have to allow the writer as a witness."  Plaintiff was then limited to asking Weston and Miller one question.

After the hearing, Plaintiff received a copy of the hearing, disposition, findings and evidence replied on, signed by Mendiboure with a finding of guilty based on the similarities between Plaintiff's and Weston's statements.  Plaintiff still had not received Romero's or McCoy's reports.  Plaintiff complains that Mendiboure's finding relied on the fact that Plaintiff yelled through the door and then left to go work out; however, Plaintiff argues, there is nothing factually supportive of the charge of disrespecting Defendants Romero and McCoy to the point of creating a "potential for violence" or "mass disruptive conduct."

As a result, Plaintiff received 90 days loss of privileges and 30 days loss of good time credits.

On April 21, 2014, Plaintiff filed an administrative appeal with Defendants MacLeod, Donaldson, Wofford, and Benavidez.  Plaintiff claimed the 115 was falsified and that he was denied his witnesses Romero and McCoy.  The appeal was denied by Defendants with findings that due process was met and administrative protections were provided.

Plaintiff also filed two health care appeals against Defendants Jeffrey, Myers, and Edmond for failing to perform their duties.  Plaintiff complained that Myers and Edmond failed to respond to two Form-22s within specified time limits.  In the Form-22s, Plaintiff complained that he was denied his witnesses at the disciplinary hearing and the report was falsified.  He requested that Defendants interview Romero and McCoy and provide statements.  Defendants Thornton, McElroy, and Lewis denied the appeals.

Thereafter, Plaintiff submitted a staff complaint against Defendant Jeffrey for his failure to

inquire into whether Romero and McCoy had filed a report with their supervisors. Plaintiff again pointed out that the CDC-115 was a falsified report as retaliation by Defendant Miller, and Defendant Jeffrey was responsible for ensuring his subordinates followed policy and protocol. Plaintiff claims that Romero and McCoy failed to make a report and that Defendant Jeffrey's inactions were an effort to cover up and protect Defendant Weston's and Defendant Miller's falsified CDC-115.  Defendants Thornton and McElroy denied the complaint.

Plaintiff claims that the above actions and omissions were committed in retaliation for Plaintiff having exercised his constitutional right to file grievances under the First Amendment. Plaintiff states he had filed a staff complaint against Defendant Miller on February 16, 2014, for being deliberately indifferent to his serious medical needs and for assessing his psychological condition without a medical license.

As a second cause of action, Plaintiff alleges that on February 8, 2014, he knocked on the clinic door to notify Defendants Stockton and Contreras that he was there for medication. Stockton and Contreras advised Plaintiff that he would be called when an officer arrived.  The clinic later paged Plaintiff but Plaintiff arrived ten minutes late.  Thereafter he was notified that he would be written up for being late.  Plaintiff then notified the yard officer of his thoughts to commit suicide.  Correctional Officer Chang escorted Plaintiff to the program office and placed in Defendant Miller's office.  Plaintiff informed Miller that he was contemplating suicide and felt like cutting his throat.  Defendant Miller stated, "Klein, you don't have the balls to cut your throat, now get out of my office."

Later, Plaintiff advised his building officer that he wanted to commit suicide whereupon he was escorted to the clinic again.  Plaintiff again met Defendant Miller who then admitted Plaintiff to the Outpatient Housing Unit.  Plaintiff later complained of Defendant Miller's actions but Defendants Sunamoto, Doe, Briggs, Zamora, Malogi, Edmond, Young, and Lewis found that Plaintiff had received treatment and staff had done nothing wrong.  Plaintiff claims Defendant Davi provided a false report to cover up the actions of Defendant Miller.  Plaintiff was issued a CDC-128(b) counseling chrono for unprovoked hostility and assaultiveness and was recommended for mental health intervention.

In his third claim, Plaintiff states he was found guilty of a CDC-115 by Defendant Davi for failing to report to his 2:30 p.m. pill line.  Plaintiff advised Davi that his primary care physician Dr. Duenas and his Hepatitis C physician Dr. Conanan issued a special protocol advising the LVNs that they had to call Plaintiff if he missed his scheduled pill times.  Plaintiff also pointed out that the CDC-115 was based on a falsified report by Defendant Hernandez.  Plaintiff claims Davi found him guilty because he had exercised his First Amendment rights by filing staff complaints against the LVNs.  The CDC-115 was dismissed by Lieutenant Stevens because Dr. Duenas confirmed that Plaintiff must be called if he missed his scheduled times.

Next, Plaintiff claims that on October 23, 2013, he was sick from his Hepatitis C medication and had fallen asleep causing him to miss his 2:30 medication time.  He did not receive his medication until 5:55 p.m.  Defendants Sellers, Green and Romero issued Plaintiff a CDC-128(b) counseling chrono for failing to report to the pill line for his medication.  Defendant Sellers reported that Plaintiff continuously missed his scheduled medication times and the LVNs had grown tired of calling the housing unit to encourage and instruct Plaintiff to report to the pill line.

Plaintiff filed a staff complaint on October 24, 2013, against Defendants Sellers, Green, and Romero for writing him up.  He advised of the side effects of Hepatitis C medication including loss of energy, depression, memory loss, and anger issues.  He further advised of the special protocols in place should Plaintiff miss a scheduled time.  Defendants Myers, Edmond, and Jeffrey found staff did not commit any misconduct.  Defendant Zamora found that there was no order commanding the LVNs to call Plaintiff and noted that it was a courtesy performed by the LVNs.

Next, Plaintiff states that on February 14, 2014, a Code 2 was announced with prevented Plaintiff from reporting to his 9:30 p.m. medication time.  Plaintiff requested that the building officer call the LVN in order to have his medication brought to him.  Quintero refused to call the LVN.  On March 7, 2014, Plaintiff filed a staff complaint against Quintero for not receiving his 9:30 medication.  On March 21, 2014, Defendants Malogi and Young found staff violated CDCR policy; however on May 5, 2014, Defendant Lewis determined that staff had not violated CDCR

1    policy, but LVN O'Kelly violated inmate medical service program policies.

2        Plaintiff next claims he reported to the clinic on December 22, 2013 at 2:15 p.m. to receive

3    his Hepatitis C medication.  He knocked on the door and was ignored by Defendants Green and

4    Romero.  Plaintiff then left the clinic.  At around 3:00 p.m. Plaintiff was called to take his

5    medication.  Later that evening Plaintiff waited to be called by Defendants Green and Romero, but

6    he was not and he never received his 9:30 p.m. medication.

7        On December 23, 2013, Plaintiff filed a staff complaint against Defendant Green and

8    Romero for deliberate indifference.  On February 6, 2014, Defendants Malogi and Young found

9    that staff had not violated CDCR policy.  On March 12, 2014, Defendant Zamora also found that

10   staff did not violate CDCR policy.

11       Plaintiff complains that he was subjected to multiple acts of retaliation because he had filed

12   grievances against prison officials.  He claims that Defendants' actions could have resulted in

13   physical pain.

14       As a result of Defendants' actions, Plaintiff claims that he lived in constant fear that his

15   medication would have to be prolonged, that his liver would continue to deteriorate, and that his

16   good time credits would continue to be taken away based on more false reports.  Plaintiff feared

17   that the LVNs would harass or retaliate against him by being insensitive and deliberately

18   indifferent to his serious medical needs.

19       Plaintiff requests damages in the amount of five million dollars ($5,000,000.00) and for all

20   Defendants to be terminated from their jobs.

21       **A.    Due Process – Disciplinary Hearings**

22       Plaintiff complains of various due process violations concerning disciplinary hearings and

23   charges.  For instance, he claims he was found guilty on March 15, 2014, of committing "acts of

24   disobedience or disrespect without being provided with the reports of Defendants Romero and

25   McCoy, and without their presence as witnesses at the hearing.  He also challenges a guilty

26   finding by Defendant Davi for failing to report to his 2:30 pill line, and a CDC-128(b) counseling

27   chrono for failing to report to the pill line.

28       "[A] state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the

7

relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-2, 125 S.Ct. 1242, 1248 (2005).

Where, as here, "success in a . . . [section] 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751, 124 S.Ct. 1303, 1304 (2004) (citing to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994)); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* to a prison disciplinary hearing where good-time credits were affected).   Because the punishment imposed at the disciplinary hearing affects the duration of plaintiff's sentence, Plaintiff's due process claim is barred until such time as plaintiff invalidates the result of the disciplinary hearing.[1]

For these reasons, Plaintiff's due process claim against Defendant Weston for her allegedly falsified report in support of disciplinary charges is barred, as is his claim against Defendant Miller for advising Weston to file a report.   Likewise, Plaintiff's claim against Defendants Romero and McCoy for failing to provide a report is barred.   For the same reasons, Plaintiff's claims against Defendants Mendiboure and Davi for allegedly denying his due process rights at the disciplinary hearings is barred.   Additionally, the claims against Defendants Sellers, Green, and Romero for falsely reporting that Plaintiff had failed to report to the pill line are barred, as is the claim against Defendant Hernandez for falsifying a report used as basis for a CDC-115 disciplinary violation.

## B.    Inmate Appeals Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish

---

[1] In addition, Plaintiff has alleged no facts demonstrating that he was denied any of the procedural protections he was due under federal law.  Given that Plaintiff's claim is barred, the court does not reach this deficiency.

8

1  that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384
2  (2005).

3       Here, Plaintiff complains that multiple Defendants wrongly denied his inmate appeals.
4  Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he
5  cannot pursue a claim for denial of due process with respect to the handling or resolution of his
6  appeals. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d
7  639, 640 (9th Cir. 1988)).

8       Accordingly, Plaintiff's claims against Defendants MacLeod, Donaldson, Wofford,
9  Benavidez, Jeffrey, Myers, Edmond, Thornton, McElroy, Lewis, Sunamoto, Doe, Briggs, Zamora,
10  Malogi, and Young for denying his various appeals and staff complaints must be dismissed.

11       **C.      Eighth Amendment Claim**

12       While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical
13  care, the Eighth Amendment is violated only when a prison official acts with deliberate
14  indifference to an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir.
15  2012) ), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir.
16  2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091,
17  1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that
18  failure to treat [his] condition could result in further significant injury or the unnecessary and
19  wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately
20  indifferent." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006)).
21  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain
22  or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122
23  (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which
24  entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks
25  omitted); *Wilhelm*, 680 F.3d at 1122.

26       The Court assumes that Plaintiff's cirrhosis and hepatitis-C conditions and his concomitant
27  need for medication satisfy the objective element of an Eighth Amendment. *Wilhelm*, 680 F.3d at
28  1122; *Lopez*, 203 F.3d at 1131.

1   Plaintiff's allegations, however, do not suffice to satisfy the subjective element. *Wilhelm*,

2   680 F.3d at 1122.   Plaintiff states that he was initially denied his medication by Defendants

3   Weston, McCoy and Romero because they weren't ready for him at the prescribed time but were

4   late.   However, he was in fact called later but refused to take his medication.   This is insufficient to

5   state a claim of deliberate indifference.   There is no indication that Defendants acted in conscious

6   disregard of an excessive risk to his health, or that there was no reasonable justification for

7   exposing him to such risk. *Lemire*, 726 F.3d at 1078 (citing *Thomas v. Ponder*, 611 F.3d 1144,

8   1150 (9th Cir. 2010)) (quotation marks omitted).

9   Likewise, Plaintiff fails to present a claim of deliberate indifference in violation of the

10  Eighth Amendment against Defendants Stockton and Contreras.   Plaintiff states he showed up to

11  the clinic on February 8, 2014, and advised Stockton and Contreras he was there for his

12  medication.   However, Stockton and Contreras advised Plaintiff that he would be called when an

13  officer arrived.   Subsequently, he was called and reported to the clinic.   There is no support for the

14  allegation that Stockton and Contreras acted in conscious disregard of an excessive risk to his

15  health.

16  Plaintiff also fails to state a claim against Defendant Miller.   At first Plaintiff was turned

17  away concerning his statements that he was suicidal; however, Defendant Miller later admitted

18  Plaintiff to the Outpatient Housing Unit.   The facts are insufficient to show Defendant Miller acted

19  in conscious disregard to an excessive risk of serious harm to his health.

20  In addition, Plaintiff fails to state a claim under the Eighth Amendment against Defendants

21  Green and Romero.   Plaintiff states he knocked on the door of the clinic at 2:15 p.m. on December

22  22, 2013, but Green and Romero ignored him.   However, he was called at around 3 p.m. to take

23  his medication; therefore, he did receive his medication.   There is no factual support for the

24  allegation that Green and Romero acted with deliberate indifference to a serious medical need.

25      **D.**     **Retaliation**

26  "Within the prison context, a viable claim of First Amendment retaliation entails five basic

27  elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

28  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

1   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

2   correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). "Prisoners have a

3   First Amendment right to file grievances against prison officials and to be free from retaliation for

4   doing so," *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584

5   F.3d 1262, 1269 (9th Cir. 2009)), and even the mere threat of harm can be sufficiently adverse to

6   support a retaliation claim, *Brodheim*, 584 F.3d at 1270.

7        Here, Plaintiff's conclusory allegations do not sufficiently support an inference that he was

8   falsely charged with disciplinary charges (1) because of the grievances he filed against staff and

9   (2) in the absence of a legitimate correctional goal. While proximity in time between engagement

10  in protected conduct and the alleged retaliation may suffice to support the existence of a retaliatory

11  motive, *McCollum v. California Department of Corrections and Rehabilitation*, 647 F.3d 870, 882

12  (9th Cir. 2011), here Plaintiff's allegations amount to nothing more than a conclusion that the

13  disciplinary charges were retaliatory, *see Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir.

14  2000). "Mere speculation that [a defendant] acted out of retaliation is not sufficient," *Wood v.

15  Yordy*, 753 F.3d 899, 905 (9th Cir. 2014), and Plaintiff's complaint lacks of any specific facts

16  supporting improper motive. *Watison*, 668 F.3d at 1114. Moreover, the factual allegations in the

17  complaint reveal that Plaintiff filed his staff complaints as a result of the reports made by staff

18  concerning his behavior, not the other way around. Therefore, Plaintiff fails to state a claim of

19  retaliation against any Defendant.

20  **III.    Conclusion and Order**

21       For the reasons set forth above, Plaintiff's complaint fails to state any cognizable claims

22  under section 1983. Plaintiff has not previously been provided with notice of the deficiencies in

23  his claims and the Court will provide Plaintiff with the opportunity to file an amended complaint,

24  if he believes, in good faith, he can cure the identified deficiencies. *Akhtar v. Mesa*, 698 F.3d

25  1202, 1212-13 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Noll v.

26  Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the

27  nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*,

28  507 F.3d 605, 607 (7th Cir. 2007).

1    Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but under section 1983,

2  it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional

3  rights and liability may not be imposed on supervisory personnel under the theory of mere

4  *respondeat superior*, *Iqbal*, 556 U.S. at 676-77; *Starr*, 652 F.3d at 1205-07.  Although accepted as

5  true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative

6  level. . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

7    Finally, an amended complaint supersedes the original complaint, *Lacey*, 693 F.3d at 907

8  n.1, and it must be "complete in itself without reference to the prior or superseded pleading,"

9  Local Rule 220.

10    Accordingly, it is HEREBY ORDERED that:

11    1.    Plaintiff's complaint is dismissed, with leave to amend, for failure to state any

12  claims;

13    2.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

14    3.    Within thirty (30) days from the date of service of this order, Plaintiff shall file an

15  amended complaint, not to exceed twenty-five (25) pages, excluding exhibits; and

16    4.    If Plaintiff fails to file an amended complaint in compliance with this order, this

17  action will be dismissed, with prejudice, for failure to state a claim.

18

19  IT IS SO ORDERED.

20    Dated:   __March 5, 2016__                      _____ /s/ *Dennis L. Beck*

21                                                    UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28